IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARK LACY, M.D., et al.,

    Plaintiffs,

v.                                                                                                                              No. 1:22-cv-00953-MIS

RAUL TORREZ, et al.,

    Defendants.

## NEW MEXICO DEPARTMENT OF HEALTH'S AND NEW MEXICO MEDICAL BOARD MEMBERS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants Patrick M. Allen., in his official capacity as Secretary of the New Mexico Department of Health ("DOH")[1], Karen Carson, M.D., Eric Anderson, M.D., Steven M. Jenkusky, M.D., Peter T. Beaudette, M.D., Eileen Barrett, M.D., Mark Edward Unversagt, M.D., Bradley Scoggins, D.O, Kristin Reidy, D.O., Kathy Johnson, P.A., and Buffie Saavedra, in their official capacities as members of the New Mexico Medical Board ("Medical Board Members") (collectively "these Defendants") hereby respond to Plaintiffs' Motion for Preliminary Injunction filed January 30, 2023 [Doc. 20] ("MPI"). The MPI should be denied for the following reasons: First, Plaintiffs are seeking affirmative relief, not maintenance of the status quo. Second, Plaintiffs have not been irreparably harmed by the enactment of the Elizabeth Whitefield End-of-Life Options Act ("the Act"), which legalizes medical aid in dying. *See* NMSA 24-7C-1 through 8 (2021). Third, Plaintiffs cannot demonstrate prejudice. Fourth, the balance of the interests of the

---

[1] Patrick M. Allen is now the Secretary of DOH. Dr. Scrase, named in the Complaint, is no longer Acting Secretary of DOH. Dr. Scrase was only sued in his official capacity and, pursuant to Federal Rule of Civil Procedure 1-025(d), a public officer's successor is automatically substituted as a party in a pending action and proceedings following the substitution shall be in the name of the substituted party. While the court may order substitution at any time, the absence of such an order does not affect the substitution. We will request the Court order the substitution in this action.

public and Plaintiffs mitigates in favor of denying the MPI. Fifth, Plaintiffs cannot meet their burden that they are likely to succeed on the merits in the lawsuit. The law requires denial of the MPI. These Defendants incorporate by reference into this brief the points and authorities stated in the Attorney General's Motion to Dismiss [Doc. 44] and his response to the MPI [Doc. 47].

## I. STANDARD FOR PRELIMINARY INJUNCTION

"[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017) (*internal quotation marks omitted*). As Plaintiffs correctly note, to obtain a preliminary injunction, Plaintiffs must demonstrate that (1) they will be irreparably harmed if the preliminary injunction is denied; (2) the threatened injury to them outweighs any injury the opposing party would suffer under the preliminary injunction; (3) the injunction is not adverse to the public interest; and (4) Plaintiffs have a substantial likelihood of success on the merits. MPI at 8 [Doc. 20, p. 13]. Plaintiffs only substantively address one of the required elements to be awarded injunctive relief. After spending 23 pages on that single element, Plaintiffs assertion that "the remaining preliminary injunction factors weigh heavily in favor of granting injunctive relief " is completely wrong. MPI at 23 [Doc. 20, p. 28].

Plaintiffs urge the Court to apply the so called "modified test," that has not been the law in New Mexico for almost six years. *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). In *Jewell*, the plaintiff argued that a district court erred by failing to apply the "modified test" under which a plaintiff that has satisfied the first three prongs for an injunction can "meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Id.* The *Jewell* Court directly rejected

this argument, noting that the Tenth Circuit's "modified test is inconsistent with," and therefore abrogated by, "the Supreme Court's recent decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)." *Id.*; *see also Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1163 (D.N.M. 2020). The Tenth Circuit could not have been any clearer: "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Id.* Accordingly, Plaintiffs are not entitled to an injunction unless they affirmatively demonstrate all four elements of the test for injunctive relief.

Plaintiffs do not address the fact that the injunction they seek is disfavored under Tent Circuit law. The Tenth Circuit has identified three "types of specifically disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (*internal quotation marks omitted*). Disfavored preliminary injunctions "require a stronger showing by the movant" than other injunctions. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *Trial Lawyers College v. Gerry Spence Trial Lawyers College*, 23 F.4th 1262, 1274 (10th Cir. 2022) ("the movant's burden is greater" when the requested injunction is disfavored). Here, the injunction Plaintiffs seek is disfavored for all three reasons, it is mandatory, attempts to alter the status quo and afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.

Plaintiffs seek a mandatory injunction. As the Tenth Circuit reaffirmed earlier this year, "injunctions are considered mandatory when they affirmatively require action." *Trial Lawyers College*, 23 F.4th at 1275; *see also Schrier*, 427 F. 3d at 1260 (an injunction is "mandatory if the requested relief affirmatively requires the nonmovant to act in a particular way, and as a result

3

places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction"). Here, Plaintiffs request that the Court "prohibit the Defendants from enforcing the Act's Informing, Referral, and Membership requirements." MPI at 24 [Doc. 20, p. 29]. The requested injunction places the Court in a position where it may have to provide ongoing supervision to assure these Defendants are abiding by the injunction, making it mandatory is mandatory and Plaintiffs must satisfy the greater burden associated with disfavored motions. *Trial Lawyers College*, 23 F.4th at 1275.

Even if the MPI did not seek a mandatory injunction, it would still be disfavored for a second, independent reason; it seeks to alter the status quo. Plaintiffs admit the Act was enacted in 2021. The order Plaintiffs seek would unquestionably alter the status quo. Plaintiffs do not address this element in the MPI and, thus, appear to have conceded they cannot meet this element. *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100 (10th Cir. 1991), *overruled per curiam on other grounds by O Centro Espirita Beneficente Uniao do Vegegal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegegal*, 546 U.S. 418 (2006). As the Tenth Circuit explained, "the status quo is not defined by the parties' existing legal rights; it is defined by the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* Plaintiffs seek to change that status quo by requesting an injunction that declares provisions of the Act to be unconstitutional. Accordingly, the injunction Plaintiffs seek would change the status quo and is thus disfavored for this reason as well.

Finally, Plaintiffs seek all the relief they could recover at the conclusion of a full trial on the merits. This attempt to short circuit the judicial process and skip to the ultimate result. "[T]he

4

limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held . . . '" *Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005)(quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Plaintiffs reach too far; they do not seek maintenance of the status quo but a dramatic departure from the status quo, without presenting evidence, without a trial and without addressing standing and other legal issues that are replete in the Complaint.

## II. POINTS AND AUTHORITIES

### A. Plaintiff Dr. Lacy and Christian Medical & Dental Associations ("CMDA") Do Not Have Standing to Seek the Requested Injunction.

Article III of the Constitution requires courts to only adjudicate actual cases and controversies. If there is not an actual case or controversy, the federal court lacks jurisdiction. There are three immutable elements of constitutional standing: (1) injury in fact, (2) causation, and (3) redressability. *Steel Company v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Bennet v. Spear*, 520 U.S. 154, 162 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Wyoming ex rel. Crank v. United States,* 539 F.3d 1236, 1241 (10th Cir. 2008).

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Defenders of Wildlife*, 504 U.S. at 560–61 (*quotations, ellipsis, brackets, and citations omitted*).

CMDA, as the party invoking federal jurisdiction, bears the burden to prove standing. *Id.* at 561; *Renne v. Geary*, 501 U.S. 312, 316 (1991); *Marcus v. Kansas Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir.1999) ("Because the jurisdiction of federal courts is limited, there is a

5

presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." (internal quotations omitted)). The Tenth Circuit requires that a plaintiff "com[e] forward with evidence of specific facts which prove standing." *Bear Lodge Multiple Use Ass'n v. Babbit*, 175 F.3d 814, 821 (10th Cir. 1999). As CMDA is suing on behalf of its members, it must demonstrate that its members would have standing to sue in their own right:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect [through the action] are germane to the organization's purpose; and (c) neither the claim nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). CMDA has not met this burden and has not established it engages in direct patient care or can or has engaged or refused to engage in provider conduct under the Act conduct

Article III's requirement of an actual case-or-controversy demands more than such generalized concerns; instead, a plaintiff must provide "a factual showing of perceptible harm." *Defenders of Wildlife*, 504 U.S. at 566. CMDA has not done so. Alleging constitutional violation does not make it so for purposes of standing.

Dr. Lacy has alleged no actual harm, has not curtailed his speech in the years that the Act has been in effect and admits he has faced no enforcement. His alleged harm is speculative and ask the Court for an advisory opinion since there is no actual harm or case in controversy.

Not only are CMDA and Dr. Lacy improper plaintiffs, but DOH and the Medical Board Members are improper defendants. They have not promulgated regulations regarding the Act and do not intend to do so. Affidavit of Patrick M. Allen ("Allen Affidavit"), ¶3, which is filed as Doc. 46; Affidavit of Amanda Quintana ("Quintana Affidavit"), ¶3, which is filed as Doc. 45.

They have not received any complaints regarding violations of the Act. Allen Affidavit, ¶4; Quintana Affidavit, ¶4. They have taken no enforcement actions under the Act and do not intend to do so. Allen Affidavit, ¶5; Quintana Affidavit, ¶5. They have not forced any health care professional to speak with their patients about physician-assisted suicide or refer their patients to another health care professional. The Act specifically provides that no criminal liability, licensing sanctions or other professional disciplinary action flows from non-compliance with the Act, NMSA §24-7C-7(A). Allen Affidavit, ¶7; Quintana Affidavit, ¶7. Neither DOH nor the Medical Board Members have the ability or authority to render the requested injunctive relief and are not proper parties to the MPI or this lawsuit. Allen Affidavit, ¶8; Quintana Affidavit, ¶8. Neither DOH nor the Medical Board Members have forced any health care professional to speak with their patients about physician-assisted suicide or refer their patients to another health care professional. Allen Affidavit, ¶6; Quintana Affidavit, ¶6. Additionally, DOH des not regulate the practice of medicine, and does not enforce laws, regulations, or professional standards relating to the practice of medicine. Plaintiffs catastrophize the Act and have invented strawmen to make their point, but that does not give them standing.

**B.**   ***Bonta* Does Not Support Plaintiffs' Position.**

Plaintiffs' invocation of an order entered in another case CMDA brought in California, captioned *Christian Medical and Dental Association v. Bonta,* attached as Exhibit A to the MPI [Doc. 20-1], as supportive of their request for a disfavored injunction is misplaced for three reasons. First, the California statute at issue in *Bonta* has vastly different requirements than the Act. Second, the law under which *Bonta* was decided is Ninth Circuit law. Third, the underlying facts pled are quite different in two major respects.

The California End of Life Option Act, the subject of the *Bonta* suit, established a criteria to obtain the aid in dying that required a physician to document a patient's oral request for the aid in dying drug. The Act does not have this requirement. In *Bonta*, the Plaintiffs did not oppose the California requirements that (1) a physician inform the patient that the physician does not participate in aid in dying and (2) the refusing physician transfer the patient's records to a physician that will help them with aid in dying. Ex. A to MPI [Doc. 20-1, p.7]. The Plaintiffs in the instant case oppose the referring requirement. Complaint, ¶¶ 77. 78.,79, 85, 96, 97, 105, 108, 122 -124, and 127-133. While the Act currently includes a general provision for conscientious objector physicians that obviates the Plaintiffs' need for injunctive relief, §24-7C-7(C), the Act is likely to be amended before the MPI is heard to clarify the fact that a physician can refuse to participate and can inform a patient that the physician does not participate in aid in dying. Allen Affidavit, ¶9 and Exhibit 1 to that Affidavit, which is filed as Doc. 46-1.

Ninth Circuit law preliminary injunction law is quite different from Tenth Circuit law on the subject. The Ninth Circuit allows application of the "modified test," that was abrogated in 2016 by *Jewell*, 839 F.3d at 1282. This difference greatly weakens the arguments made in the MPI. Even under the relaxed Ninth Circuit standard, the *Bonta* Plaintiffs' assertions that they might prevail on their free exercise argument, their due process argument, and their equal protection argument all failed. *See* Ex. A to MPI [Doc 20-1].

Because the *Bonta* Plaintiffs were complaining about different requirements in a different statute in a different jurisdiction, the application of the *Bonta* case is limited in the present case. Both the facts and the law make it inapposite.

### C. Plaintiffs Cannot Demonstrate Irreparable Harm.

The Plaintiffs' identified injury is a violation of their constitutional rights. The irreparable-harm prong's overarching inquiry "compares (i) what would happen if the preliminary injunction were not granted; with (ii) what would happen if the preliminary injunction were granted; and then (iii) asks whether the difference between (i) and (ii) is irreparable." *Jewell*, 839 F.3d at 1276. A party seeking a preliminary injunction "must first demonstrate that [irreparable] injury is likely before the other [traditional equitable] requirements will be considered." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (*quotation omitted*). "Absent a showing of irreparable harm, the Court need not reach the other factors of the inquiry because [the] plaintiff does not provide sufficient support for issuance of injunctive relief." *May v. U.S. Bank, N.A.*, No. 13-cv-1621, 2013 WL 3200473, at *2 (D. Colo. June 24, 2013). This is because "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *DTC Energy*, 912 F.3d at 1270 (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005)). For this reason, "allegations of past harm are inadequate to establish irreparable harm." *Donahue v. Kan. Bd. of Educ.*, No. 18-3130, 2019 WL 2359370, at *2 (10th Cir. June 4, 2019). Tenth Circuit decisions have linked the "irreparable injury" inquiry to the "likelihood of success" inquiry, holding that a plaintiff who cannot demonstrate a substantial likelihood of success is not entitled to a presumption of irreparable harm. *See Schrier v. Univ. Of Colo.*, 427 F.3d 1253, 1266 (10th Cir. 2005) ("Dr. Schrier has failed to demonstrate the requisite likelihood of success on his free speech and academic freedom claims. As a result, he is not entitled to a presumption of irreparable injury."). In *Heideman v. S. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003), for example, the Tenth Circuit held that a mere assertion that the harm implicates First Amendment claims is insufficient, as "[i]t is necessary, however, to

consider the specific character of the First Amendment claim." 348 F.3d at 1190. The fact that Plaintiffs waited eighteen months to file this action is evidence that they have not suffered irreparable harm. The Tenth Circuit has held that delay in seeking preliminary relief cuts against finding irreparable harm. *Fish v. Kobach,* 840 F.3d 710, 753 (10th Cir. 2016). Because Plaintiffs delayed in seeking injunctive relief and failed to show a substantial likelihood of success on their constitutional claims, the Court cannot allow them a presumption of irreparable injury.

Plaintiffs seek a preliminary injunction requiring declaration that provisions of the Act are unconstitutional. Given the fact there is no enforcement mechanism in the Act for noncompliance, no Plaintiff has suffered harm and there is no credible threat of harm in the future. Plaintiffs cannot satisfy the irreparable-injury requirement and is not entitled to a preliminary injunction against these Defendants.

Plaintiffs have also failed to provide any evidence that they are likely to sustain irreparable injury in the future. To obtain a preliminary injunction based on anticipated future injuries, it is not enough that future irreparable injury be *possible*. "[I]rreparable injury [must be] *likely* in the absence of an injunction." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008). A plaintiff "must demonstrate a significant risk that he or she will experience" irreparable harm. *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (*quotation omitted*). "[A] plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations take it into the area of speculation and conjecture." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (*quotation and brackets omitted*). An amendment to the Act is currently being considered by the New Mexico Legislature that relates directly to this litigation. The proposed legislation, introduced as substantively identical bills House Bill 501 and Senate Bill 471, clarifies that health care professionals are immunized from criminal liability,

10

licensing sanctions or other professional disciplinary action for refusing., for reasons of conscience, to participate in medical aid in dying in any way, including specifically refusing to provide information to patients regarding end-of-life options or refusing to refer a patient to another provider who could assist them in exercising end-of-life options. Allen Affidavit, ¶9 and Doc. 46-1. This legislation moots the issues raised by Plaintiffs in this lawsuit, if passed into law.

Plaintiffs have provided no evidence suggesting that they might face consequences in the future under the provisions of the Act. They have certainly has not established a "significant risk" that they might face consequences *Fish*, 840 F.3d at 751. Speculation does not suffice to establish irreparable injury. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Plaintiffs have not provided *any* reason, even a speculative one, to establish that they might they might face constitutional consequences under the Act. "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The order attached to the MPI as Exhibit A [Doc. 20-1] factually supports Plaintiffs' arguments. No competent evidence supports issuance of an injunction. Because Plaintiffs cannot satisfy the irreparable-injury requirement, Plaintiffs cannot show they will suffer irreparable injury if the requested injunction is denied and they are not entitled to a preliminary injunction.

    **D.    The Balance of Potential Harm to Plaintiffs Does Not Outweigh the Harm to Others if an Injunction Issues.**

The harm to the opposing party and the public interest generally merge when the Government is the opposing party, as in the present case. *Nken v. Holder*, 556 U.S. 418, 435

(2009). Plaintiffs must demonstrate that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party. *Schrier*, 427 F.3d at 1258. The Tenth Circuit has indeed held that a state's ability to enact and enforce measures it deems to be in the public interest is an equity to be considered in balancing hardships." *Heideman v. S. Salt Lake City*, 348 F.3d at 1191. New Mexico has a "sovereign interest in being in control of, and able to apply, its laws throughout its territory." *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d at 476-77. The United States Supreme Court has held that any time a state is enjoined by a Court from effectuating statutes enacted by the representatives of the people, the state suffers a form of irreparable harm. *Maryland v. King*, 567 U.S. 1301, 1303 (2012). Issuance of the injunction would injure New Mexico's sovereign interest in enforcement of its laws. The balance of potential harm to Plaintiffs is outweighed by the harm to others if an injunction issues.

### E. The Requested Injunction is Adverse to the Public Interest.

Plaintiffs fail to show that a preliminary injunction is in the public interest. Plaintiffs argue generally that it is always in the public interest to protect constitutional rights. MPI at 24. Plaintiffs have not demonstrated that the balance of harms weighs in their favor. The Act is narrowly tailored to meet New Mexico's compelling interests. New Mexico exercises its police powers to protect the health and welfare rights of its citizens because public health is a compelling state interest. The orderly management and transfer of medical records is a legitimate state interest. "The police power of a state 'extends to all matters affecting the public health or the public morals.'" *Stone v. Mississippi,* 101 U.S. 814, 818 (1880). Access to medical services, including access to appropriate referrals and prescribed drugs, is not just a legitimate state interest but a compelling state interest. *Buchwald v. Univ. of N.M. School of Medicine*, 159 F.3d 487, 498 (10th Cir. 1998). States have "great latitude" pursuant to their police powers to legislate as to the protection of these matters.

*Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 756 (1985), *overruled on other grounds by Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003). New Mexico has a compelling interest in requiring informed consent in many contexts. *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2373 (2018).

It is clear that granting the requested relief would substantially injure New Mexico's sovereign interests, as it would restrain the state's exercise of its historic police powers. *Id.* at 756. Granting the injunction would substantially injure New Mexico's sovereign interest in enforcing its laws within its jurisdiction and that is adverse to the public interest.

### F. Plaintiffs Fail to Show a Substantial Likelihood of Success on the Merits.

An injunction cannot issue because Plaintiffs have not established that they have a substantial-likelihood-of-success, because the evidence presented thus far does not persuade the Court that the Plaintiffs are reasonably likely to establish that these Defendants violated their rights under § 1983 or the Constitution. The legal standard behind the substantial-likelihood-of-success prong is an exacting one, which dooms the MPI.

> The proper standard applicable to the substantial-likelihood-of-success prong is that the movant must (i) carry the burden of production, i.e., he or she must present a prima facie case; and (ii) make it reasonably likely -- beyond just being "not unreasonable" -- that the factfinder would actually find for the movant, i.e., that the movant would satisfy the burden of persuasion. *See supra note 6*. The Court will always require the full first showing -- the plaintiff must present a quantum of evidence sufficient to survive a motion for directed verdict if it were presented at trial.

*Diné Citizens Against Ruining Our Env't v. Jewell*, 2015 U.S. Dist. LEXIS 109986, at *116 (*citation omitted*). "All courts agree that Plaintiff must present a prima facie case but need not show a certainty of winning." *Logan v. Public Employees Retirement Association*, 163 F. Supp. 3d 1007, ¶22 (D.N.M. 2016). An appraisal of the possible outcome of the case on the merits is of

13

particular importance when a court determines in the course of balancing the relative hardships that one party or the other will be injured whichever course is taken on the Rule 65(a) application. However, the degree of likelihood of success is not determinative. If a plaintiff seems unlikely to win, a preliminary injunction will not be issued unless a plaintiff demonstrates a strong probability of injury if the court fails to act. Thus, the balancing which takes place between the two factors is often referred to as a "sliding scale." Accordingly, although a showing that plaintiff will be more severely prejudiced by a denial of the injunction than defendant would be by its grant does not remove the need to show some probability of winning on the merits, it does lower the standard that must be met. Conversely, if there is only slight evidence that plaintiff will be injured in the absence of interlocutory relief, the showing that plaintiff is likely to prevail on the merits is particularly important. In this same vein, it has been held that a preliminary injunction may be granted even though the harm factor favors defendant if plaintiff demonstrates a substantial likelihood of ultimately prevailing. 11A Wright & Miller, *supra*, § 2948.3 (*footnotes omitted*). The Court's formulation uses the same principles to arrive at roughly the same result, and that result, requiring the movant to fully carry the burden of production, and additionally present a likelihood, which will vary depending on the movant's showing on the other prongs, of carrying the burden of persuasion, constitutes the analytical framework for assessing a movant's satisfaction of the substantial- likelihood-of-success prong in the ordinary case. Plaintiffs have not met this burden.

### 1. Plaintiffs' Free Speech Theory Fails.

The First Cause of Action in the Complaint alleges a violation of the First Amendment's free speech clause. Plaintiffs incorrectly argue that this claim triggers a strict scrutiny analysis. It does not because the Act regulates commercial speech and, thus, is subject to intermediate scrutiny. Laws restricting commercial speech are subject to an 'intermediate' level of scrutiny. *Central*

*Hudson & Gas Electric Corporation v. Public Service Commission of New York*, 447 U.S. 557 (1980) ;see *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1066 (10th Cir. 2001). Speech made in connections with the provision of professional services is commercial speech. Informing a terminally ill patient of her medical options is not compelled speech, because it is factually accurate, objectively true, neutral information that patient is entitled to have under the Act. *National Institute of Family and Life Advocates at 2372.* The provider **is** not compelled to encourage or discourage a patient to act, just give the information regarding aid in dying options. There is no script dictated in the Act. There has not been and will not be any adverse consequences, if a provider fails to inform the patient of all their options. Plaintiffs are unlikely to succeed on their free speech claim made in the First Cause of Action in the Complaint

### 2. Plaintiffs' Free Exercise Theory Fails.

The Second Cause of Action in the Complaint alleges a violation of the First Amendment's free exercise clause. Plaintiffs incorrectly argue that this claim triggers a strict scrutiny analysis. It does not because the Act does not target or directly regulate religious practices or beliefs; it is facially neutral. If a law is neutral and generally applicable, it does not violate the Free Exercise Clause "even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). To determine whether a law is generally applicable, the Court must determine whether the legislature decided that the governmental interests it sought to advance was worthy of being pursued only against conduct with a religious motivation." *Id*. at 542-43. Neutral, generally applicable laws that incidentally burden religious free exercise will ordinarily survive constitutional challenge as long as they are rationally related to a legitimate government interest. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006) "A law is neutral so long as its object is

15

something other than the infringement or restriction of religious practices." *Id.* Plaintiffs are unlikely to succeed on their free exercise claim.

        **3.**       **Plaintiffs' Due Process Argument Fails**.

The Third Second Cause of Action in the Complaint alleges a violation of the Fourteenth Amendment's due process clause. Plaintiffs argue the Act is void for vagueness, challenging particular terms: "terminal illness" and "participating," These are the same terms CMDA challenged in *Bonta*. The Act would fail if it did not provide people of ordinary intelligence with a reasonable opportunity to understand what is expected under the law or of the Act r a person of ordinary intelligence fair notice of what is prohibited, or if it authorizes or encourages seriously discriminatory enforcement. *Hill v. Colorado*, 530 U. S. 703, 732 (2000); *see also Grayned v. City of Rockford*, 408 U. S. 104, 108–109 (1972). The Act does neither. The *Bonta* correctly court found the challenged terms provided "a reasonable physician of ordinary intelligence a reasonable opportunity to know what is required…" Based on the law and that analysis, Plaintiffs due process theory fails.

        **4.**       **Plaintiffs' Equal Protection Argument Fails.**

The Fourth Cause of Action in the Complaint alleges a violation of the Fourteenth Amendment's equal protection clause. This claim is analyzed under the rational basis test because Plaintiffs are not members of a suspect class and the Act does not treat any physician differently in the pursuit of the legitimate state interests outlined above. The Act does not discriminate on the basis of religion. Based on the law and that analysis, Plaintiffs equal protection theory fails.

        **5.**       **Plaintiffs' Right to Association Theory Fails.**

The Fifth Cause of Action in the Complaint alleges a violation of the First Amendment's right to expressive association. This theory also fails. CDMA wants to limit its membership based

on beliefs, much like the Ku Klux Klan. Plaintiffs provide no evidence, like bylaws or affidavits that would indicate its members would be excluded for complying with the Act. The state has a compelling interest in asking providers to put the needs of their patients above the desires of the leadership of a voluntary association. The Act makes this clear and protects a provider from ouster. The Act also allows for a provider to exercise her rights as a conscientious objector and remain in the club. It is likely these Defendants will prevail on the merits of this and every other cause of action alleged in the Complaint and an injunction should not issue.

### III. CONCLUSION

For the foregoing reasons, the requested injunction should not issue. If an injunction issues, a proper bond amount must be set.

Respectfully submitted,

WIGGINS, WILLIAMS & WIGGINS
A Professional Corporation

*Electronically Filed*

By */s/ Patricia G. Williams*
    Patricia G. Williams
Attorneys for DOH and Medical Board Members
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400
PWilliams@wwwlaw.us

We hereby certify that on this 10th day of
March, 2022, the foregoing was filed electronically
through the CM/ECF system, which caused all
parties or counsel of record to be served
by electronic means, as more fully reflected on
the Notice of Electronic Filing.

WIGGINS, WILLIAMS & WIGGINS, P.C.

By  */s/ Patricia G. Williams*
       Patricia G. Williams